# E-filing

Ross Shade
26 Gibson Rd
Woodland, CA 95695
Tel. 530-666-4817

Mary C. Shade
26 Gibson Rd
Woodland, CA 95695
Tel. 530-666-4817



## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS S. SHADE and ) | |
| MARY C. SHADE ) | |
| Plaintiffs ) | |
| vs. ) | CASE NO. |
| ) | |
| JUDICIAL COUNCIL OF THE STATE ) | C08-03950 WHA |
| OF CALIFORNIA, ) | |
| ) | **COMPLAINT** |
| RONALD M. GEORGE, in official ) | |
| capacity as Chairman of JUDICIAL ) | |
| COUNCIL, ) | |
| ) | |
| WILLIAM C. VICKERY in capacity as ) | |
| Administrative Director of Courts ) | |
| ) | |
| Does 1 - 100 ) | |
| Defendants ) | Demand for Jury Trial |

**Jurisdiction:**

1:    Ross Shade and Mary C. Shade, hereinafter *Plaintiffs*, are residents

of the State of California, citizens of the United States and allege they have

suffered great harm caused by oppression, fraud and malice of judges of the

Superior Court of the County of Yolo and the *conscious disregard* of duties

of the California Judicial Council based on rule of *respondent superior* and

Article 6 Section 6 of Constitution of the State of California subsections (c)

and (d).

1

2:      This action is authorized by <u>U.S.C. Title 42 section 1983</u> (<u>i.e.</u>, civil action for deprivation of rights). Plaintiffs seek exemplary damages from Judicial Council. The Chairman of the Judicial Council, Administrative Director of the Courts, and members of Council knew or should have known of the non-judicial acts resulting in oppression, fraud and malice by judges of the Superior Court of the County of Yolo.

3.      Successively the Judges of the Superior Court of the County of Yolo abused discretion and failed to provide justice as to Ross Shade and were guilty of fraud and malice toward Mary Shade in separate actions each of which affected the communal interests of the other.

4.      These acts, and the failure to act, deprived plaintiffs of their rights under the Fourteenth and Seventh Amendments to the U.S. Constitution.

\*\*\*

5.      **Venue:** The Defendants are located in San Francisco, California

\*\*\*

6.      **Intradistrict Assignment:** Same as above.

\*\*\*

7.      Plaintiffs claim that the Superior Court of the County of Yolo, *under color of authority, custom, and statutes,* has denied Plaintiffs their rights by practices that deprived others of their rights, such that the Defendants knew or should have known of the discriminatory and unfair practices.

8.      The Judicial Council has both promulgated rules that promote injustice and failed to adopt rules that would protect against such injustice as has been noted many times so that it is claimed that *there is no civil justice for the poor and disadvantaged* in California.

\*\*\*

9.  There should be no question but that *respondent superior* applies as *the Administrative Director serves at the pleasure of the Judicial Council and performs functions <u>delegated</u> by the Counci*l (<u>California Constitution</u>

2

Article 6 Section VI subsection (c)),  Monell v Department of Soc. Svcs,
436 U.S. 658 (1978).

***.

**10.     Statement of causes of action pertaining to Superior Court of
the County of Yolo concerning Plaintiffs' action against owners and
operators of convalescent hospital:** (**a**) Plaintiffs filed suit to recover
damages in the Superior Court of County of Yolo on May 8, 2006; (**b**)
Defendant on April 3, 2007 filed a Motion for Summary Judgment to which
Plaintiffs filed timely pleadings in opposition ; (**c**) Plaintiffs discovered in
November 2007 that these pleadings had become *missing from the Court's
case file* some-time prior to the hearing when the Superior Court
GRANTED the Motion for Summary Judgment on **July 3, 2007**  (i.e.,
Court ruled plaintiffs failed to show there was any material fact to be
determined at a trial;(**d**) As can be shown, this was not just some clerical
error based on information in the Court's Case File showing that the Court
had notice of the fact the plaintiffs' *opposition pleadings* had become
missing; (**e**) As shown herein, still other acts and rulings of this Court make
this court's ruling in this case *suspect in this case and others in which
Plaintiff were parties.*

***

11.     On **July 3, 2007**, the Superior Court of the County of Yolo also
ruled that the case was barred by California Code of Civil Procedure
section 340.5.  But Defendant's Counsel  had raised this defense twice
before. (a) First was as a Motion to Strike the Complaint and the Court in
Department 11 had ruled against Defendant). [1]  (b) Second time was in
Opposition to Plaintiffs' *Motion for Judgment Based on the Pleadings
which* on **March 20, 2007** the Court rejected when it GRANTED this

---

[1]  In part based on case Hills v. Aronsohn (1984) 152 Cal.App.3d 753.

Motion. However based on the same facts when granting this Motion for Judgment on the Pleadings this Court on **July 3, 2007** GRANTED Defendant's Motion for Summary Judgment based on the same facts except that the Opposition to that Motion for Summary Judgment had disappeared from the Court's Case File. That the complaint was not barred by section 340.5 (supra) and is supported by substantial authority see Mason v. Marriage & Family Center (1991) 228 Cal.App.3d 537.

\*\*\*

12.    In another department of the Superior Court of the County of Yolo (on **November 28, 2006**) Counsel for Defendant was ordered to provide answers to interrogatories (i.e., verified without objections within 14 days). Finally on **March 28, 2007** Counsel (somewhat) complied with that order. [2] Plaintiffs (i.e., based on those answers) scheduled the first (written) deposition of a witness that would be called testify if and when the case was to go to trial (i.e., had made arrangements for a deposition officer to read the questions and transcribe the deposition on **May 10, 2007**). [3] Court sustained Defendant's objections to the questions (to be asked during a written deposition) and in doing so prevented any depositions prior to the hearing of the Motion for Summary Judgment on **July 3, 2007**.

\*\*\*

---

[2]    Verifications were sent separately and not attached to Answers to Interrogatories a month after answers were received and until then Council had failed to identify the party whom Plaintiffs wanted to depose.

[3]    Under California rules the opposing counsel may also submit questions after which additional deposition questions can be included prior to the deposition. An officer of the Defendant had also been subpoenaed to present documents about which the person being deposed was to answer questions. Code of Civil Procedure imposes substantial sanctions if opposing council files objections and thus objections to written depositions are usually not filed so that the purposes of the written deposition are fulfilled. Counsel chose not to include his own questions but instead objected to questions but failed to include the instructions deposition officer was to follow (i.e.), inclusion of the documents).

4

13.     That the Superior Court of the County of Yolo was involved in a *scheme* to deny Plaintiffs of their right to equal protection under the Fourteenth Amendment and trial by a jury under the Seventh Amendment of the U.S. Constitution is based is shown (in part) by Court's preventing the taking a deposition and refusing to or ignoring the filing of the Plaintiffs' First Amended Complaint.

\*\*\*

14.     That Court, based on a scheme depriving Plaintiffs of their rights is also evidenced by rulings on **March 20, 2007** and based on acts allowing Debt Collector Law Firms to obtain judgments (**a**) not supported by the evidence and (**b**) by refusing to take Judicial Notice when required to do so in six out of eight cases filed by Debt Collection Law Firms subject to the Fair Debt Collection Practices Act.

\*\*\*

15.     Because Plaintiff Mary Shade had been injured while in the care of a Convalescent Hospital after being admitted on May 10, 2003 and prior to being taken to the Community Hospital on May 28, 2003 suffering from pneumonia, a smashed pelvis, and broken femur that would require hip replacement surgery that caused Plaintiff Ross Shade to become her caregiver in September 2003, Plaintiff Ross Shade was no longer able to work outside the home and to continue making payments on some credit card accounts. Debt Collector Law Firms filed collection actions in the Superior Court where that Court had already developed a systematic method of allowing these Debt Collection Law Firms to obtain Judgments. Court was depriving defendants equal rights when Ross Shade filed an Answer and defended based on the fact that their clients (the supposed plaintiffs) were not the real parties in interest. This was based on substantial information of which the Court was required to take Judicial Notice and Counsel was

5

unable to produce valid evidence that their client was entitled to a Judgment.

\*\*\*

16. The Superior Court and Municipal Court serving the needs of this small County has recently been consolidated (after voters in 1998 [after several previous attempts to obtain approval] received permission when judges voted to consolidate. Judges' duties rotate and may hear criminal cases one day and civil or family law cases on another. During hearing their primary interest was whether Plaintiff's credit card showed an amount payable and refused to take judicial notice as to the real party in interest (i.e., debt buyers who acquired the right to collect from the bank or other institution *servicing* the account after the account balance had been *securitized*).

\*\*\*

17. The Court GRANTED Plaintiffs' Motion for Judgment on the Pleading, in the case against the convalescent Hospital but failed to provide a judgment by failing to provide notice (i.e., that the Court had granted the motion). <sup>4</sup> For Defendants to be successful in their defense, Plaintiffs were not supposed to know that the Motion for Judgment on Pleadings had been granted so that Counsel for the Defendant might then file his own Motion for Summary Judgment. The Court of its own volition proceeded to ask Counsel to file an Amended Answer to the Complaint within 30 days of date of hearing.

\*\*\*

---

<sup>4</sup> This failing to provide notice was accompanied by not including Court's decision in either tentative ruling nor during the hearing on that March 20, 2007 (i.e., nothing was said during the hearing about the GRANTING the Motion for Judgment on Pleadings during the hearing) and the recording of the decision at a date other than is usual procedure in the record as *disposition of a motion* on the same date in the record as when that motion was filed.

6

18.     No notice of the Granting of the Motion for Judgment on the

Pleadings was provided <u>nor was there even anything</u> *said about granting*

*this Motion* <u>during the Hearing on March 20, 2007</u>. Furthermore, in the

Court's Case Record where the disposition of the case is customarily shown

(<u>i.e.</u> December 29, 2006) nothing was recorded there *either*. Plaintiffs have

<u>only recently</u> discovered that it had been recorded *briefly* elsewhere in the

record. Plaintiffs had been mystified by the absence of a <u>ruling</u> (<u>i.e.</u>, the

Motion for a Judgment on the Pleadings for over a year).

***

19.     There had been no tentative ruling as to the events on **March 20,**

**2007** and barring *clairvoyance* Counsel for the Defendant would have had

no way of knowing ahead of time that the Judge was going to grant

permission to file an Amended Answer to the general denial filed

previously unless there were ex parte communications between Counsel

and the Judge. That there were such communications is evidenced by the

fact that on **March 20, 2007** Counsel served and filed the requested

Amended Answer to the Complaint and a few days later served and filed

the Motion for Summary Judgment <u>that the Court Granted on July 3, 2007</u>.
**5**

***

20.     Plaintiff requested that the California Chief Justice / *Chairman of the*

*Judicial Council* investigate the missing records and the abuse of discretion

by the Court that had granted a Motion for Summary Judgment based on

---

**5**    California Code of Civil Procedure section 438 allow the Court, in order to
prevent injustice, to allow the party to file an Amended Answer generally when a
party may have failed to deny the claims of the Plaintiff in the original Answer to
Complaint. This was not the situation here as the general denial filed by the
Defendant was sufficient.

something less than the *de nova* review required by California Statutes. [6]
Plaintiffs strongly disagree with *General Counsel* of the *Judicial Council*
who has written Plaintiffs that "... *the Judicial Council (nor the
Administrative Office of the Courts) are not authorized to supervise judges
and are not responsible for the Administrative Director's failure to
supervise and control the court*." [7]

\*\*\*

21:    While most all defendants being sued by Debt Collector Law Firms
are faced with the option of engaging the services of an attorney to defend
or accepting the inevitable, (i.e., *a default judgment),* Plaintiff elected to
exercise the right to defend. [8]  Based on own knowledge of how large banks
and other corporations operate Plaintiffs had accumulated a mountain of
information about how the current practice of securitization of their
accounts works in order that banks can maintain liquidity (See Uniform
Commercial Code Sections 8102 et seq., U.S. Treasury Dept, and Office of
the Comptroller of the Currency Regulations).

---

[6]  . It should be noted that this request may not have been seen by the Chief
Justice because first it was forwarded to *Commission of Judicial Performance* and
when sent a second time was answered by the General Counsel for the
Administrative Office of the Courts.

[7]    As provided by Article 6 Section 6(c) of  California Constitution  Judicial
Council: " ...appoint an Administrative Director of the Courts, who serves at
[Council's] pleasure and performs functions delegated by Council or the Chief
Justice; and Section 6(d) "... council shall ...adopt rules for court
administration, practice and procedure ...")
Plaintiffs contend adopting rules implies authority to enforce rules etc.

[8]    The judge of this new unified court warned Plaintiff, with good intentions (but
was admitting there would be no defense allowed), and that by defending *a
defendant would be responsible for the additional costs of plaintiffs litigation.*
This policy where there is no defense cannot help but cause conflicts among those
judges that strive to be fair and those that see people who have encountered
financial difficulties as less deserving of fair and equitable treatment in the
Superior Court of the County of Yolo.

\*\*\*

22.     The Debt Collector Law Firm's attorneys; (**a**) filed the complaints
showing the bank servicing the account as the plaintiff (instead of the real
party in interest); (**b**) failed to provide required verifications from the
creditor as required by the California and U.S. Fair Debt Collection
Practices Acts; (**c**) failed to have complaints signed based on personal
knowledge of the plaintiff's officer; (**d**) used false addresses to prevent
subpoenaing of declarants; (**e**) refused to answer interrogatories truthfully
etc.; even with all the above the Superior Court refused to take judicial
notice and granted judgments in six out of eight cases filed, (**f**) refused,
after Ross Shade had complied with California Code of Civil Procedure
section 1987(b), to produce as a witness a person having knowledge of
banking rules that require banks, in order to maintain required liquidity, to
sell (without *recourse*) account balances of credit card accounts. Court
after refusing to take judicial notice of these facts awarded judgments
<u>against</u> Plaintiff. [9]

\*\*\*

23.     Plaintiffs are <u>Mary C. Shade</u> who in April **2003** was 75 years of age
when she spent a few days at the Community Hospital due to a minor
medical condition and then returned home.  Plaintiff <u>Ross Shade</u> is now 81
and provides care for Plaintiff Mary Shade who is now disabled and unable
to perform what is necessary in order to care for herself (and has provided
this care since September 2003).

\*\*\*

24.     <u>Mary Shade</u> was taken to a Convalescent Hospital on May 10, **2003**.
On May 28, **2003** she was back in the Community Hospital with

---

[9]     The Court even awarded a judgment where all evidence showed the account
was with AT&T Universal Bank, by granting a judgment to Citibank. Plaintiffs
claim this represents the attitude of the Court (<u>i.e.</u>, credit card debtors are guilty
and should pay whoever happens to sue even if not the real party in interest).

9

pneumonia, broken femur, a smashed pelvis, was unconscious and in critical condition. In June **2003** the pneumonia subsided and Plaintiff Mary Shade underwent hip replacement surgery made necessary because of the broken femur. On September 4, **2003,** after a two- month stay in another convalescent hospital, <u>Mary Shade</u> returned home and Plaintiff <u>Ross Shade</u> has been the sole caregiver ever since.

\*\*\*

25.     As a *caregiver* <u>Ross Shade</u> is no longer able to work outside of the home as providing care requires his presence almost 24 hours a day 7 days a week and is not able to be away from home but for a few hours at a time. These circumstances are likely to continue until it is *financially* possible to obtain assistance of others and possibly obtain medical treatments not now covered by medical insurance.

\*\*\*

26.     Prior to becoming a caregiver, Ross Shade's *work frequently required working outside the home*. This work had taken the form of assisting promising new companies develop accounting procedures and records that might allow him to assist them make use of SEC regulations and provisions of the California Corporation Code that now allow small businesses to offer stock to the public in *small business public offerings* (i.e., where the enterprise is exempt from reporting requirement of large public companies after sale of stock to investors). Plaintiff Ross Shade had developed the expertise to allow clients to file with the SEC and State in order to offer stock to investors; had worked with several companies. In 2003 he was working with an existing client with a proprietary rooftop solar system and an affiliate with a proprietary fuel cell battery. The fees for assisting a new enterprise go public and raise up to $5 million would reasonably be in excess of several hundred thousand dollars and would provide continuing income from services as an officer and director until

10

when the companies might be ready to engage the services of others to *go public*.

\*\*\*

27.     In August **2003** Plaintiff Ross Shade informed banks servicing his credit card accounts that no payments would be made in September 2003 because of these unfortunate circumstances. These *circumstances* precluded assisting any clients to go public or to engage in financial transactions that require borrowing of money.

\*\*\*

28.     Plaintiff Mary Shade was injured in **May** of **2003** and in **July 2005** it was *clear* that Mary Shade would never again be able to walk without using a *walker* and would need continuing care-giver assistance (i.e., it determined that complete recovery would not be possible and based on California Code of Civil Procedure section 340.5 the Complaint must be filed within one year of when became aware or should have been aware of the physical manifestations of the injury). Hills v Aronsohn (1984) 152 Cal.App.3d 753; see also Mason v Marriage & Family Center (1991(228 Cal.App.3d. 537.

\*\*\*

29.     On **May 8 2006,** Plaintiffs filed a timely complaint against the corporation that owns the convalescent hospital where Mary Shade contracted pneumonia and was injured. There is no question but that the suit was filed within three years of when the injury occurred and evidence shows that manifestations of the injury (i.e. as to the long term affect of the injury) were learned in July 2005. (Code of Civil Procedure section 340.5)

\*\*\*

30.     When transferred from the Convalescent Hospital back to the Community Hospital it was determined that Mary Shade had a smashed pelvis, a broken femur that would require hip replacement surgery if she

survived pneumonia. In February **2006** Plaintiffs had seen information that caused reasonable belief that *the Convalescent Hospital* might have been negligent (i.e., before deciding to file the complaint that was filed on May 8, **2006**).

\*\*\*

31.    The Superior Court of the County of Yolo granted a Motion for Summary Judgment denying plaintiffs' right to a jury trial on July 3, 2007. Subsequently it has been discovered that all of the Plaintiffs' Opposition Pleadings were missing from the Court's case files. Based on further investigation it was learned that the Superior Court judge would have had ex parte communications with Counsel for Defendant

\*\*\*

32.    Counsel for Defendant had produced no evidence that Defendant was not negligent.

\*\*\*

33.    Plaintiffs Motion had presented evidence that Defendant had been negligent (i.e., (**a**) Judgment on the Pleadings was supported by declarations and that it was claimed showed there had been negligence and (**b**) Plaintiff's Opposition to Motion for Summary Judgment (that had been lost by the Court) presented evidence. Defendant had failed to meet the burden of showing this evidence was not true.

\*\*\*

34.    On **March 20, 2007** Court had no option but to grant the *Motion for Judgment on the Pleadings based on these same facts.* At this point a scheme appears to have been hatched. (i.e., when on March 20, **2007** the court ruled *during the hearing except no words spoken by the judge saying* that the Court was GRANTING the Motion for Judgment on Pleadings). What happened then was that Counsel was allowed 30 days to file an *Amended Answer.* Supposedly this would allow Counsel to then file their

own Motion for Summary Judgment which they did on April 3, 2007. Then the Superior Court (on July 3, 2007) granted that Motion for Summary Judgment as to Mary Shade. But somehow all the Plaintiff's Opposition Papers became *missing sometime before the hearing on July 3, 2007.*. The same facts that were sufficient to cause the Court to Grant the Motion for Judgment on the Pleading were the same facts that would make it impossible for the Court to Grant the Defendant Motion for Summary Judgment.

\*\*\*

35.    There were ex parte communications evidenced by the fact that on **March 20, 2007** Counsel for Defendant was instructed to file an Amended Answer to the Complaint and Counsel *complied* by preparing the *requested* amended complaint that was then served *and filed* **on March 20, 2007.**

\*\*\*

36.    Mary Shade had requested accommodation for disability and while Ross Shade has difficulty hearing in some Court Rooms had no problem hearing what was said on March 20, 2007.

\*\*\*

37.    Superior Court's clerical staff and Court Reporters are aware that the court has failed to provide justice including that clerk who was present when Plaintiff examined the Court's record of the Case against the convalescent hospital but who, it has been discovered, was no longer working for the Court shortly after Plaintiff requested the Presiding Judge of the Superior Court investigate why the records were missing. .

\*\*\*

38.    Plaintiffs attempted to find an attorney who has the requisite knowledge to assist. The one who appears best qualified refuses to represent clients in the Superior Court of the County of Yolo stating that the Yolo County Superior court is "something else" and even though his

13

office is in this County does not accept cases that would require appearances in this court.

\*\*\*

39.    Starting in **2004** Debt Collection Law Firms filed debt collection lawsuits in which Ross Shade was sued for amounts he was unable to pay on credit card accounts. Each of the Debt Collectors were subject to the Fair Debt Collection Practices Act (15 U.S.C. section 1692) because debt collection was a substantial part (if not the only) services they provide.

\*\*\*

40.    Three of the Debt Collection Law Firms filed a total of seven of these lawsuits and one other law firm filed one lawsuit.

\*\*\*

41.    Each of the Debt Collection Law Firms that contacted Plaintiff attended annual events organized by Debt Buyers Association in Las Vegas where Debt Seller, Debt Buyers and Attorneys meet and where those wishing to sell display and sell Portfolios of debts.

\*\*\*

42.    The supposed debts of persons who have been unable to pay are bought and sold and those who buy and are unsuccessful or unable to sue in California will resell the names and the amounts supposedly receivable sometimes more than once.

\*\*\*

43.    What are sold between the hundreds of debt collectors is the name of the debtor, name of original creditor and the amount said to be unpaid.

\*\*\*

44.    The Fair Debt Collection Practices Act required that the debt collector at the time of first contract offer to provide the name of the original creditor and the verification of the amount and validation of the debt if requested in writing within 30 days (i.e., 30-day letters).

14

\*\*\*

45.    None of the Debt Collector Law Firms that Contacted Plaintiff were able to provide valid verification of the debt for which they thereafter filed an action in the Superior Court of the County of Yolo.

\*\*\*

46.    Plaintiffs have filed complaints with the Bureau of Consumer Protection of the Federal Trade Commission, each of which was supported by copies of the documents the Debt Collector Law Firms provided, if any, and this Bureau accepted the Complaints but took no action.

\*\*\*

47.    Pleadings show that at least one firm that filed these lawsuits against Plaintiff considers these events no different from *meeting clients at a county club*. However California Business and Professions Code section 6129 prohibits members of the California Bar from *either directly or indirectly buying or (being) interested in buying any evidence of debt or thing in action with intent to bring suit thereon*. Any party that assists in the collection of debt is subject to the Fair Debt Collection Practices Act and attending the events in Las Vegas in order to obtain causes of action upon which to due seems little different from paying a runner.

\*\*\*

48.  At Superior Court of the County of Yolo, clerks accept the complaints without questioning the obvious fact that complaint is signed only by the Debt Collector's Attorney and not by an officer of the *bank* in whose name the case was being filed. California Code of Civil Procedure section 446 (i.e., ... *when a corporation is a party the verification may be made by any officer thereof*). When asked each Debt Collection Law Firm's Attorney would have to admit that the Superior Court of the County of Yolo *does not*

15

*care who* Debt Collector Law Firms shows as *the plaintiff in these cases*".
[10]

\*\*\*

49.     Of the eight cases filed by these Debt Collection Law Firms, the Court awarded six  judgments the Law Firms sought. All of these six judgments were appealed to the (new) Appellant Division of the Superior Court. [11]

\*\*\*

50.     The attorney representing one of the Debt Collector Law Firms requested the case be dismissed prior to trial and when evidence that Counsel had presented falsified statements as to verification and validation of the debt (i.e., credit card count had a $7500 credit limit but debt buyer's attorney was suing for over $26,000 claiming that was the amount due).

\*\*\*

51.     In *the* case in which Court did not Grant Judgment; (**a**) the Attorney could not produce the information the judge wanted him to produce in view of the Plaintiff's pleadings; (**b**) Court then instructed the attorney to produce; (**c**) Plaintiff had other evidence that Debt Collector Law Firm had (again) used a bogus address in a declaration so as to prevent subpoena of the declarant and OBJECTED to the fact that Court was assisting the attorney making an appearance in the case on behalf of the Debt Collector

---

[10]   Plaintiffs claim that this convenient non-compliance with California Code of Civil Procedure section 367 (i.e., action must be in name of the *real party in interest*) has made the Superior Court of the County of Yolo a friendly court in which Debt Collector Law Firms can count on to process their frivolous actions to obtain judgments for debt buyers that can then be sold or collected by the law firm including unconscionable interest sometimes exceeding 25% per annum.

[11]   Plaintiffs' cases in the Appellant Division of the Superior Court were the first civil cases to be heard by this new part of the California Judicial System. It appears that the Judicial Council had failed to provide the Superior Court with instructions with how to proceed with its duties or failed to supervise implementation of Proposition 48.

Law Firm; (**d**) court demanded and received an apology, trial was then *continued*; (**e**) but when the trial continued the attorney still unable to provide what Court wanted in *order to grant the judgment* and the trial ended; (**f**) Court's response concerning bogus addresses was that Plaintiff could recover the cost of attempting to obtain service.

\*\*\*

52.    The principle violation of California Statute by Superior Court of the County of Yolo was the failure to follow California Evidence Code Section 453 (i.e., where Court refused to take judicial notice of the facts and abused judicial discretion in doing so). That the Bank shown as the plaintiff did not own the account balances and information is shown from such impeachable sources as (**a**) reports and records of the Office of the Comptroller of the Currency; (**b**) Annual Reports including the Audited Financial Statements of Banks, (**c**) Reports and Studies prepared for the Federal Reserve Banks, (**d**) Reports published by the FDIC, and (**e**) a study / report prepared by the auditors of banks explaining just what had to be done in order to remove the credit card account balances from the books to comply with liquidity requirements of regulations (i.e., during what is securitization of the account balances (Uniform Commercial Code Section 8101 *et seq*.). **[12]**

\*\*\*

53.    Of the six debt collection cases that resulted in judgments to supposed clients of Debt Collector Law Firms, Plaintiff appealed the first five (to the new Appellant Division approved by the voters as part of Prop 48 in November 2002).

\*\*\*

---

**[12]** When questions involve who owns an asset, it is the auditor who must determine if *the bank* is the real owner (i.e., party in interest). If the auditors fail to report the legal relationship between parties to transactions the auditor can and has been held responsible as was the case of Arthur Andersen where (as in securitization transactions) special purpose entities (trusts) to be the owner accomplish sale of securities.

54.   After not <u>receiving the Clerk's Transcript on Appeal of the last three</u> <u>appeals, Plaintiff gave up and did not bother to appeal the last one as this</u> <u>process had already consumed most of Plaintiff's time for more than two</u> <u>years</u>. The Appellant Division was not functioning.

\*\*\*

55.   The Superior Court's Appellate Division had (<u>after more than a year)</u> <u>not even provided a Clerks Transcript of the record in four of the cases</u> <u>despite requests to do so in order that Plaintiff might File an Opening Brief.</u>

\*\*\*

56.   <u>There had been only one hearing by a panel of judges selected from the</u> <u>judges of the Superior Court and the *Appellant Division* appeared to be a</u> <u>non-operating entity that had failed to communicate with Plaintiff after the</u> <u>required notice of appeal and request for the record filed.</u>

\*\*\*

57.   Facts show, and studies would confirm, that the Superior Court of the County of Yolo had developed a systematic method of providing Debt Collector Law Firms with the judgments they were seeking and that is systematic method was a scheme that made the Superior Court of the County of Yolo a tool of unscrupulous attorneys who could obtain judgments even when cases was not supported by valid evidence (i.e., Court did not examine the evidence but accepted the word of the attorney in lieu of examining the documents). [13]

\*\*\*

58.   Based on Plaintiffs own expertise, the segment of the operations of the Superior Court pertaining to collection of debts has a *high cost benefit ratio*

---

[13]   An example of this is when all the physical evidence showed the account was owned by AT&T Universal Card Bank that had issued the card and serviced the account. But the Court granted Citibank the Judgment.

18

[14] such that in a large county (such as observed in Sacramento County), a judge would have been able to grant default judgments in several hundred debt collection cases in half a day or less thus earning the filing fees paid by Debt Collector Law Firms.

\*\*\*

59.   With the court awarding the prevailing party the costs of litigation *the poor* are helping support the Judicial System to a greater extent than any other segment (i.e., those cases that are considered to be *more important*).

\*\*\*

60.   The Superior Court of the County of Yolo may be counting on the receipt of *filing fees from Debt Collection Law Firms* in order to expand its own facilities by being a court that is considered *friendly* to Debt Collector Law Firms.

\*\*\*

61.   In every courtroom at every hearing Plaintiff's case *was heard last*. (i.e., every other matter scheduled for 9:00 AM would be heard first and Plaintiff has spent hours setting and waiting until every matter scheduled for that date and time had been heard first. [15]

---

[14]   Perhaps the highest cost benefit ratio for any of the various types of cases that are filed each year in the Superior Courts of the State of California.

[15]   As a care-giver for Mary Shade, Ross Shade must be available should there be anything that Mary Shade cannot do for herself. Even when this fact was explained to the Judge this practice continued. The obvious conclusion is that it was the policy of the Superior Court of the County of Yolo to discourage anybody representing themselves in the court to be heard last. If this fact alone needs to be heard by this Court perhaps others will not feel as if they (like Rosa Park) were being asked to move to the back of the bus.

   This, if nothing else, should convince this U.S. District Court that the Superior Court has a policy that is a violation of the Fourteenth Amendment of the U.S. Constitution. Any high-minded jurist caught up in this maze would soon find his position intolerable and take the first opportunity available to exit a place on the bench (i.e., leaving only those who have less understanding of the canons of law and of ethics).

19

***

62. Processing of *debt collection cases* has had gigantic growth in the last decade and considering the assistance California Superior Courts provide to Debt Collection Law Firms in exchange for filing fees, only action in the Federal Courts can put a stop to wholesaling *deadbeat lists*. [16]

***

63. In that the Debt Collector Law Firms have each violated the Fair Debt Collection Practices Act in each of the eight cases filed in the Superior Court of Yolo County, plaintiffs are entitled to file an action for damages in California or in the Federal Court plus costs. [17]

***

64. U.S.C. Title 42 section 1983 affords a right to bring this civil action in federal courts by reason of prejudice, passion, neglect, intolerance, or otherwise, (i.e., state laws were not being enforced by Court following their own rules that denied claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment in which no specific intent is required).

***

65. Plaintiffs allege that the *Judicial Council* has failed in its *duty* to *oversee* the *operations* of the Judicial System and has failed to act to

---

[16] Sale of deadbeat lists is a violation of California Civil Code Section 1788.12(c) but is the basis upon which companies like the Debt Buyers Association Inc. have grown into huge profitable businesses.

[17] Thus on the one hand, the Superior Court has awarded judgments that, on the second hand, are causes of action in the Federal Court to recover the damages plus costs. *Equal justice for all* would entail each party against whom a judgment has been obtained to then sue in the State or Federal Courts based on the California or Federal Fair Debt Collection Practices Acts. Logic calls for the Judicial Council to establish rules not inconsistent with the Constitution or statutes that prove justice because *with this advocate-driven judicial system* no attorney will agree to be an advocate for the poor.

protect and provide justice for the poor and disadvantaged in civil court such that it is claimed that there is no civil justice for a large portion of the citizens of this State.

<div align="center">***</div>

66. When affected by circumstances that had changed due to illness, Plaintiffs became members of a class. [18] Civil action in which the Judicial Council is held accountable is allowed as acts are non-judicial. (Monroe v. Pape 1961) 365 U.S. 167; and Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).)

<div align="center">***</div>

67.     Changes in the California Constitution as set forth in Proposition 48 voter's pamphlet was passed by the voters in November 2002. Voters were unaware that it established a court of limited jurisdiction within the Superior Court of California. This affected the vast majority of all persons who are poor and disadvantaged in which in the Superior Court the losing party has no rights to an appeal to an *independent court* made up of judges with no allegiance to cronies of the family of judges of the Superior Court. Plaintiffs allege what was established by Prop 48 deprives these parties of the right to equal justice under the Fourteenth Amendment of the U.S. Constitution [19]

<div align="center">***</div>

68.     The Judicial Council is to develop the court's rules not inconsistent with statute for the administration of justice. What has happened to Plaintiff

---

[18]   See California Civil Code section 3345(a) et seq., that allows triple the amount of exemplary damages than might otherwise be awarded.

[19]   The voters were mislead by the information in official voter pamphlet that informed them that all that this Prop 48 did was to eliminate provisions no longer necessary (i.e., because of the consolidation of municipal and superior courts in California). Of the five appeals Plaintiff Ross Shade filed in that Appellant Division only one was ever heard by the panel of judges from the Superior Court. (i.e., Judges from the same family of judges that had ruled against him).

Ross Shade is evidence of failure to develop these rules <u>and</u> see that Superior Courts comply with those rules. [20]

\*\*\*

69.    The phrase "an independent judiciary" does not mean that the Superior Courts in California can ignore the words of <u>Article One Section 7(b) of the California Constitution</u>) (<u>i.e.</u>, "A citizen or class of citizens may not be granted privileges not granted on the same terms to all citizens". This is actionable under <u>U.S.C. Title 42 section 1983</u> (derived from the Ku Klux Act of 1871) and does not exempt the Judiciary from duty *to bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California.* [21]

\*\*\*

70.    The General Counsel for the Judicial Council's section for the Administrative Office of the Courts, [in a request that the Judicial Council investigate the loss of records by the Superior Court resulting in granting a Motion for Summary Judgment] informed Plaintiff that

*"... that neither the Judicial Council nor the AOC is authorized under California law to supervise or discipline judges for alleged misconduct, including bias, and complaints about judicial bias or <u>other misconduct</u> are properly addressed to the Commission on Judicial Performance (CJP), the entity authorized under the California Constitution to investigate such complaints."* [22]

\*\*\*

---

[20]    This would have no purpose if the Judicial Council failed to enforce those rules.
[21]    See Article 20 Section 3 of the California Constitution.

[22]    Plaintiff's claim that Counsel's *motive* is to avoid responsibility and possible lawsuits for failure to perform (<u>i.e.</u>, and avoid liability on the basis of *respondeat superior*). The statement made by Counsel is a *convenient* ploy, but the duties of the CJP are specific as to *judges*. This complaint is not one in which Plaintiffs have a desire to see any judge disciplined and the blame should be placed upon those that have failed to prevent such acts as occurred in this Court. .

71.   The statute at <u>U.S.C. Title 42 section 1983</u> that affords a right to bring a civil action in federal courts by reason of prejudice, passion, neglect, intolerance, or otherwise and <u>prevents those who would develop their own rules</u>, (i.e., as was the intent when the Kl Klux Act was passed and which is every bit as applicable today as it was when passed in 1871).

\*\*\*

72.   What happened in the Superior Court causing Plaintiffs great harm <u>was not limited or caused by just one judge</u>.

\*\*\*

73. Judges (*not just one judge*) of the Superior Court that failed to prevent one Debt Collector Law Firm from routinely using declarations wherein a bogus address was used by a Debt Collector in order to prevent service on the declarants.

\*\*\*

74. Judges (*not just a judge*) instructed Counsel debt buyers about what to say in order to be able to rule in favor of the Debt Collector Law Firm's clients dring trial.

\*\*\*

75. The Court (*not a judge*) that allows Debt Collector Law Firms to file actions in the name of a bank after the Attorney; (**a**) failed to prevent all of the Debt Collector Law Firms that filed actions from filing their lawsuits in the name of a bank that had been the original debtor but which no longer was the real party in interest; (**b**) failed to obtain verification or validation from the supposed plaintiff as required by the Fair Debt Collection Practices Act by either failing to respond when Plaintiff responded to a (30-day letter) asking for verification of the amount and address of the party or by providing false information manufactured by the debt buyer that had retained their services; (**c**) Court avoided the facts and rules on the basis of a systematic plan of action to dispense with justice in favor of

23

expediency that may have had other motives all of which were supposedly in accordance with the statutes of the State of California.

\*\*\*

76.     A complaint to the Commission on Judicial Performance is not applicable but a complaint to the Judicial Council asking for it to investigate was proper when Plaintiffs Pleadings were found to be missing and the Presiding Judge of the Superior Court refused to investigate.

\*\*\*

77.  That Superior Court has deprived Plaintiffs of their right for equal protection of the laws when Court granted <u>Motion for Summary Judgment as to Mary Shade,</u> filed by <u>counsel who failed to provide any declarations, affidavits and any other evidence as could reasonably have supported the Motion in accordance with California Code of Civil Procedure section 347c</u> and is the basis for this civil action as authorized by U.S.C. Title 42 section 1983 *Civil Action for Deprivation of Rights* derived from the Ku Klux Act of 1871.

\*\*\*

78.     It may have been that the judge of Superior Court of the County of Yolo ruled based on a personal aversion, extreme repugnance, and rejection of persons who are older (<u>i.e.</u>, known as *ageism*). In light of the extreme aversion it is reasonable for the court to rely on cases dealing with criminal intent such as <u>Screws v. United States, 325 U.S. 91(1945)</u> when an action offends some principle of justice so rooted in the conscience of people to be ranked as fundamental. Plaintiffs claims the same logic applies in civil cases. [23]

\*\*\*

---

[23]     This is similar to the racism that made passage of Ku Klux Act necessary for what is considered a *hate crime*. Like racism, *ageism* is based on stereotyping people simply because they are older

24

79. Plaintiffs were entitled to what in California is called a Patents Bill of Rights but when an accident occurred in the convalescent hospital became what could be a *case study* of what is wrong with the California Judicial System (i.e., where courts serve unscrupulous Debt Collector Law Firms and only those who have important financial interests can live outside the *economic imprisonment* that affects one's freedom every bit as much as threatening as the criminal court and the jailor).

\*\*\*

80. Plaintiffs asks this court to consider following concerning the harm caused by failure to supervise the Superior Court. Except for what has happened to Ross Shade when being a care giver was necessary, Plaintiff would have earned money from fees or from share of profits, commissions, from the increase in value of businesses, development of tools and machines or production of products. These would have provided more satisfaction than the litigation that ensued and would have allowed Plaintiffs to earn more than what might be earned from wages. Although born with the condition of dyslexia this did not prevent Plaintiff from obtaining B.S. and MBA degrees with a major in accounting from University of California in Berkeley and a Law Degree from University of San Francisco after obtaining experience with a large international CPA firms. After becoming a *retired* partner of a CPA firm plaintiff founded, Plaintiff continued earning money while gaining expertise in other fields including those from which I obtained fees and from which a share of profits are available. But for the time wasted because of litigation, Plaintiffs net worth would have increased substantially.

\*\*\*

## PRAYER

Plaintiff asks that the Judicial Council be held responsible based on *respondent superior* for the great harm including that from pain, physical and emotional suffering by the Plaintiffs for which this court should award damages of $2,000,000 and so the Defendant Judicial Council will be encouraged improve the California Judicial System by causing changes in the administration of justice so that others may not suffer, plaintiffs seek damages of an additional $6,000,000 if parties are not otherwise able to agree to a settlement or alternatively a trial in this U.S. District Court with a jury to award damages as it may see fit.

## VERIFICATION

We, Ross Shade and Mary C. Shade, are the plaintiffs in this case, have prepared the foregoing COMPLAINT, and know the contents thereof based on our own knowledge, or if not known believe these to be true. If asked to testify as to the matters contained therein we would do so and do now declare under penalty of perjury under the laws of California that the foregoing information is true and correct and that this declaration is signed in the County of Yolo on this

AUGUST __15__ 2008

Ross Shade

Mary C. Shade

26

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
ROSS SHADE & MARY C. SHADE

### DEFENDANTS
JUDICIAL COUNCIL OF THE STATE OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff  YOLO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Ross Shade & Mary C. Shade Self Represented
26 Gibson Rd., Woodland, CA 95695
Tel # 530-666-4817

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S.C. Title 42 section 1983
Brief description of cause:
Conscious disregard of duties - Fourteenth Amendment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 8,000,000.

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND      ☐ SAN JOSE

DATE  August 15 2008

SIGNATURE OF ATTORNEY OF RECORD